SEEGER, by Next Friend, v. ST. LOUIS SILVER COMPANY, Appellant.

**Division One, February 22, 1906.**

1. **ONE NEW TRIAL.** The appellate court will not reverse the action of the trial court in granting one new trial, unless the case is such that no verdict in favor of the party to whom the new trial is granted could, under any circumstances, be permitted to stand.

2. ————: Negligence: Elevator. Where there was evidence that an elevator in which plaintiff was injured was out of repair and unsafe and facts from which the jury might infer that plaintiff's injuries were due to defendant's negligence, the appellate court will not hold that the trial court erred in setting aside an involuntary nonsuit.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood*, Judge.

AFFIRMED.

*E. T. & C. B. Allen* for appellant.

(1) There is no evidence tending to prove that the absence of a brake was the proximate cause of Seeger's injury. The circumstances of the accident demonstrate that the injury was due to other causes than defendant's alleged negligence. Goranssen v. Mfg. Co., 186 Mo. 307; Warner v. Railroad, 178 Mo. 134; Plefka v. Co., 145 Mo. 321; Sexton v. Railroad, 98 Mo. App. 501; Wray v. Co., 68 Mo. App. 390. (2) The doctrine of *res ipsa loquitur* does not apply to this case: (a) Plaintiff limited his right to recover to a specific act of negligence, hence he cannot avail himself of this rule. Feary v. Railroad, 162 Mo. 96. (b) Where the evidence shows the cause of the accident there is no ground for the application of the doctrine of presumption. Worship v. Railroad, 170

Mass. 464; Buckland v. Railroad, 181 Mass. 3; Hite v. Railroad, 130 Mo. 141. (c) Where the injury may have resulted from either of the two different causes the doctrine does not apply. Fuchs v. City, 167 Mo. 620; Epperson v. Co., 155 Mo. 346; Cothron v. Co., 98 Mo. App. 348; Smart v. City, 91 Mo. App. 592; Hester v. Dold, 84 Mo. App. 454. (d) As a general rule this doctrine does not obtain where the relation of master and servant subsists. Oglesby v. Railroad, 177 Mo. 272; Copeland v. Railroad, 175 Mo. 650; Smith v. Railroad, 113 Mo. 70; Bowen v. Railroad, 95 Mo. 268; Howard v. Railroad, 173 Mo. 524; Glasscock v. Dry Goods Co., 106 Mo. App. 657; Rickaly v. Co., 108 Mo. App. 138; Breen v. Cooperage Co., 50 Mo. App. 202; Berning v. Medart, 56 Mo. App. 448; Brown v. Co., 65 Mo. App. 164; Dobbins v. Brown, 119 N. Y. 188; Sack v. Dolese, 137 Ill. 129; Viles v. Stantesky, 83 Ill. App. 398; Huff v. Austin, 21 N. E. 864; Davidson v. Davidson, 46 Minn. 117. (3) Seeger was negligent: (a) In getting on the elevator to hoist it. He could have pulled the rope without doing so, and thus avoided the injury. (b) In getting on the elevator to go to the third floor, instead of walking up the stairs. He had the choice of a safe way, and an unsafe way. He chose the latter. He cannot recover. Moore v. Railroad, 146 Mo. 572; Hurst v. Railroad, 163 Mo. 310. (c) In attempting to remove ashes. His duty did not require it. Stagg v. Spice Co., 169 Mo. 499; Glover v. Nut Co., 153 Mo. 341; Anderson v. Box Co., 103 Mo. App. 382. (4) The negligence of Kramer was that of a fellow-servant, and plaintiff cannot recover. Hawk v. McLeod, 166 Mo. 121. (5) Under no circumstances could a verdict in favor of plaintiff be allowed to stand, and this court should reverse the order setting aside the non-suit. Warner v. Railroad, 178 Mo. 129; Coatney v. Railroad, 151 Mo. 35; State ex rel. v. Railroad, 149 Mo. 104; Veatch v. Norman, 95 Mo. App. 506.

*Eugene McQuillin* and *Wilson A. Taylor* for respondent.

(1)  The case should have been submitted to the jury.  Because: 1.  The evidence is sufficient to warrant an inference of negligence on the part of defendant.  2.  In the absence of specific explanation of the proximate cause of the injury the doctrine of *res ipsa loquitur* applies.  Ellis v. Waldron, 19 R. I. 369; Fairbank Co. v. Innes, 24 Ill. App. 33; affirming 125 Ill. 410; Gallagher v. Edison Illuminating Co., 72 Mo. App. 576; Sackewitz v. Am. Biscuit Co., 78 Mo. App. 144; Johnson v. Railroad, 104 Mo. App. 588; Jegglin v. Roeder, 79 Mo. App. 428; Tateman v. Railroad, 96 Mo. App. 448; Turner v. Haar, 114 Mo. 346; Blanton v. Dold, 109 Mo. 74; Moore v. Korte, 77 Mo. App. 500; Hill v. Scott, 38 Mo. App. 370; Seiter v. Bischoff, 63 Mo. App. 157; Scott v. London and St. Catharine Dock Co., 3 Hurl. and Colt 596; Byrne v. Beadle, 2 H. & C. 725; Briggs v. Oliver, 4 H. & C. 407; Donohue v. Brown, 104 Mass. 21; Barnowiski v. Helson, 89 Mich. 523; 2 Shearman and Redfield, Negligence (5 Ed.), sec. 703; 1 Thompson, Negligence, sec. 1082.  (2)  The doctrine of *res ipsa loquitur* may be invoked, notwithstanding specific acts of negligence are alleged in the petition.  Gallagher v. Edison Illuminating Co:, 72 Mo. App. 576.  (3)  Irrespective of the existence of the relation of master and servant between the defendant and plaintiff, the doctrine of *res ipsa loquitur* obtains in this case.  Blanton v. Dold, 109 Mo. 64; Gerlach v. Edemeyer, 47 N. Y. Super. Ct. 292.  (4)  The defendant was guilty of negligence in failing to have the elevator inspected and in reasonably good repair.  Haviland v. Railroad, 172 Mo. 112; Hickman v. Railroad, 22 Mo. App. 344; Gutridge v. Railroad, 105 Mo. 520; Minnier v. Railroad, 167 Mo. 113; Grattis v. Railroad, 153 Mo. 403.  (5)  In the absence of evidence to the contrary, the law presumes that the person damaged was in the exercise of ordinary

care.   Weber v. Railroad, 164 Mo. 205; Büesching v.
St. Louis Gas Light Co., 73 Mo. 233.   (6)   This pre-
sumption of due care obtains, notwithstanding knowl-
edge on the part of the one injured of the dangers in-
volved.   O'Donnell v. Patton, 117 Mo. 20; Parsons v.
Railroad, 94 Mo. 294; Petty v. Railroad, 88 Mo. 320;
Loewer v. Sedalia, 77 Mo. 446; Smith v. St. Joseph, 45
Mo. 449.    .

MARSHALL, J.—This is an action for $5,000
damages for personal injuries received by the plaintiff
on the 25th of November, 1902, by reason of being
struck by the falling of a broken piece of a cog wheel
on an elevator in the premises occupied by the defend-
ant, at number. 207 Chestnut street in the city of St.
Louis.   At the close of the whole case the court sustain-
ed a demurrer to the evidence, and the plaintiff took a
nonsuit with leave.   Thereafter the court sustained the
motion to set aside the nonsuit, and the defendant ap-
pealed.

## THE ISSUES.

The petition alleges that at the date of the accident
the defendant was engaged in the silver plating busi-
ness, and occupied a four-story building, through the
western part of which was a hatchway or elevator open-
ing, from the ground floor to the top of the building;
that in said hatchway was an elevator for the purpose
of hoisting and lowering materials to and from the var-
ious floors of the building; that said elevator was oper-
ated by hand, by means of a shive rope, pulleys, wheels
and other machinery; that plaintiff entered the employ
of the defendant on the 20th of November, 1902, and as
a part of his employment was required to remove bar-
rels of ashes from the several floors of said building to
the bottom floor thereof, by using the said elevator,
and there to empty them and return the empty barrels

to the floors above; that on the 25th of November, 1902, plaintiff, under the immediate direction of defendant's foreman, undertook, with the assistance of another employee of the defendant, to remove a barrel of ashes from the third floor of said building; that he, with said assistant, placed the barrel on the elevator, boarded said elevator, and took it to the basement floor, where he emptied the barrel, and replaced it on the elevator, and boarded the elevator and intended to return, with the barrel, to the third floor; that as he was about ready to pull the shive rope to "remove" the elevator, a large wheel, being a part of the machinery of the elevator, at the top of the hatchway, broke and gave way and a part of said wheel fell through the hatchway, and struck the plaintiff on the head, fracturing his skull, and greatly wounding him; that the wheel and other machinery used in operating the elevator were, and had been for some time prior to the accident, "unsafe, old, worn and dilapidated and unfit for use; that the brake thereof was out of repair, or not in use at said time; that said defendant, well knowing the condition of said elevator and machinery and appliances thereto, negligently and wrongfully permitted the same to be and remain in a defective and unrepaired state; that at the time plaintiff received the injury, as aforesaid, he was a minor fourteen years of age, and had only been employed for a period of about five days by defendant in said establishment; that because of his youth and inexperience, he was not qualified to control or operate the elevator used by defendant in carrying on its business, and was not aware of the hazard incident to the operation of said elevator; that the said defendant, well knowing the youth and inexperience of the plaintiff, and the danger incident to the operation of said elevator, failed and neglected to warn or instruct plaintiff as to the danger of said elevator, or how to use the same, and negligently and wrongfully directed, or suffered and permitted, this plaintiff to work with and operate said elevator,

well knowing the same to be dangerous, and unfit to be used, as aforesaid.''

The answer is a general denial, coupled with a plea of contributory negligence: first, in going upon and attempting to raise an elevator, which immediately theretofore had been broken and rendered dangerous to his knowledge and without the knowledge of the defendant, by the careless and negligent use thereof by himself and one Kramer, a fellow servant; and, second, in violation of the rule of the defendant, communicated to the plaintiff, prohibiting the use of said elevator by persons engaged in the same line of work as plaintiff, and in disobedience to explicit orders not to use said elevator, given plaintiff by defendant. The reply is a general denial.

The case made is this:

The defendant occupied a four-story building, in which there was a freight elevator, extending from the top floor to the basement. At the time of the accident, and for some time prior thereto, the brake, or the rope that operated the brake, on the elevator was broken and out of repair, so that in lowering the elevator it was necessary for the operator to take hold of the shive rope to control the speed of the elevator, and also to stop it before it struck the ground. The testimony for the plaintiff tends to show that by holding to the shive rope, the hands of the operator would become bruised or scarred by reason of the friction of the rope on the hands, and that in order to prevent injury to the hands the operator would sometimes clinch the rope in his arms and put his foot against the rope and press it against the side of the elevator. The testimony for the plaintiff further tends to show that the plaintiff had been employed about four days before the accident to do odd jobs about the factory, including assisting in removing barrels of ashes by way of the elevator; that on the day of the accident he assisted Kramer in putting a barrel of ashes on the elevator on the third floor,

and Kramer started the elevator downward, he and Kramer riding on the elevator with the barrel of ashes; that the elevator dropped of its own weight from the third floor to within about ten feet of the basement, Kramer not holding onto the rope or pressing his foot against the same; that when within about ten feet of the basement Kramer took hold of the rope for the purpose of slowing the speed of the elevator and stopping it before it came violently against the ground, and in this way suddenly checked the speed of the elevator, and succeeded in lowering it gently to the ground; that when he so suddenly checked the speed of the elevator some dust and perhaps some brick fell from the cogwheel at the top of the elevator; that Kramer and the plaintiff then emptied the ashes and put the barrel on the elevator, and about that time a call came for the plaintiff to go on an errand, and that Kramer told him to take the barrel on the elevator back to the third floor and he, Kramer, would run the errand, as the plaintiff had run so many errands that morning; that plaintiff got on the elevator and pulled the shive rope, when a portion of the cog wheel at the top of the elevator fell and struck the plaintiff and injured him.

The testimony on the part of the defendant tended to show that it was no part of the duty of either the plaintiff or Kramer to remove the ashes; that the defendant had in its employ a man who attended to that work; that said man in removing the ashes would put the barrel on the elevator, and then stand on the third floor, and taking hold of the elevator rope would lower the elevator to the basement, and then walk down, unload the barrel, and from the basement would hoist the elevator, without getting on it, back to the third floor by pulling on the shive rope; that the foreman of the defendant had several times warned the plaintiff and other boys around the establishment not to use the elevator or get on it at all, because it was dangerous and they were liable to be hurt, and that he had told the plain-

tiff and the other boys that if they used the elevator again he would "fire them all."

There is no conflict about the fact that the brake, or the rope that operated the brake, had been broken for some time previous to the accident and that the de- defendant knew it. Neither was there any conflict as to the fact that the purpose of the brake was to regulate the speed of the elevator, and to stop it. The testimony introduced on behalf of the de- fendant further shows that the boys had been told not to use the elevator at all, but to carry the ashes down the steps, and to carry the empty ash barrels up the steps, and that it was no part of the duty of the plaintiff to. empty the ashes at all, but that his sole duty was to make "satin wheels—brush wheels," and that his place of work was at the bench where those wheels were made, and to go on errands, and to sweep up around the shop. The testimony for the defendant further showed that the break of the cog wheel was "as bright as a silver dollar," showing that it was a recent break and not a break arising from an old crack. There is no dispute in the evidence that the elevator has not been inspected for some time. There is no direct ev- idence as to what caused the cogwheel to break, and the defendant claims that it was the act of Kramer in suddenly checking the speed of the elevator, by taking hold of the shive rope, that caused the cogwheel to break.

The foregoing is a sufficient statement of the facts and the conflict in the testimony for the purposes of this case.

1.

The rule is now well settled in this State that this court will not reverse the action of a trial court in granting one new trial, unless the case is such that no verdict in favor of the party to whom the new trial is thus granted, could, under any circumstances, be per- mitted to stand. [Haven v. Railroad, 155 Mo. 216;

Kuenzel v. Stevens, 155 Mo. 280; Graney v. Railroad, 157 Mo. 678; Coleman v. Cole, 158 Mo. 260; Neville v. Railroad, 158 Mo. l. c. 318; Roberts v. Telephone Co., 166 Mo. l. c. 385; Herndon v. Lewis, 175 Mo. l. c. 125; Emmons v. Quade, 176 Mo. l. c. 29; Moore v. Railroad, 176 Mo. 545; Warner v. Railroad, 178 Mo. l. c. 129; Ottomeyer v. Pritchett, 178 Mo. l. c. 165; Fitzjohn v. Railroad, 183 Mo. l. c. 78.]

The question then resolves itself into this: could a verdict for the plaintiff, on the facts stated, be permitted to stand? That is, conceding all the facts to be as the plaintiff shows them to be, and that the verdict of the jury was in his favor, could the verdict be permitted to stand? Or otherwise stated, conceding the facts, do they show a cause of action in the plaintiff? The facts shown by the plaintiff are that he was employed by the defendant; that it was a part of his duty to assist in removing barrels of ashes from the upper floor to the basement on the elevator; that the brake, or rope to the brake, on the elevator that controlled the speed of the elevator and that stopped it, was broken, so that it could not be used, and that in order to regulate the speed and stop the elevator it was necessary for the operator to hold on to the shive rope with his hands, or to wrap it around his arm, and press the rope with his foot against the side of the elevator, and thus furnish a human brake for the mechanical brake that was out of order; that in the discharge of his duties, the plaintiff and Kramer placed a barrel of ashes on the elevator, and started it from the third floor towards the basement; that they did not hold on to the rope or press a foot against it and regulate its speed, but that when the elevator came within ten feet of the basement, Kramer took hold of the rope and suddenly checked the speed of the elevator, so as to lower it gently to the ground; that when he did so some dust, and perhaps some bricks, fell from the cogwheel at the top of the elevator; that after unloading the ashes they placed the barrel on the

elevator, the plaintiff got on it and pulled on the shive rope, to start the elevator upward, and that immediately a portion of the cogwheel fell from the top of the elevator and struck the plaintiff on the head, the broken portion of the cogwheel showing on the surface a break that was "bright as a silver dollar." There was a conflict in the testimony as to whether it was or was not a part of plaintiff's duty to remove the ashes by means of the elevator, and also a conflict as to whether defendant's foreman had or had not forbidden the plaintiff and the other boys from using the elevator. There was no direct evidence as to what caused the cogwheel to break. Neither was there any direct evidence that the pulling on the shive rope by Kramer, and the sudden stoppage of the speed of the elevator, was or was not sufficient to break the cogwheel. The defendant's theory and claim is that it was that act of Kramer that broke the cogwheel, while the theory and claim of the plaintiff is, first, that if the brake and the rope thereto had not been out of repair, there would have been no occasion for taking hold of the shive rope, or of suddenly checking the speed of the elevator; and, second, that the cogwheel was old, worn, dilapidated and unfit for use; and, third, that the doctrine of *res ipsa loquitur* applies.

On this showing, if the case had been submitted to the jury, and they had returned a verdict for the defendant, and the trial court had granted the plaintiff a new trial, there could be no question that this court would not have interfered with the action of the trial court, for it could not be said that no verdict in favor of the plaintiff could have been allowed to stand. Where the court grants the plaintiff a new trial, after the jury has returned a verdict for the defendant, it may do so because the court disagrees with the jury on the finding of fact, as well as where the court is of opinion that it committed errors of law. Where the court nonsuits a plaintiff, it does so solely upon the theory that, con-

ceding all the facts to be as shown by the .plaintiff, or aided by the defendant's testimony if such is the case, still the plaintiff is not entitled to recover as a matter of law. In either event, the appellate court does not interfere .with the ruling of the trial court as to one new trial, unless the appellate court finds that no verdict in favor of the plaintiff could have been permitted to stand.

In the case at bar controverted questions of fact were presented by the testimony of the parties, both as to the duty of the plaintiff, as to whether he was acting within the scope of his employment, and as to whether he had been forbidden to use the elevator. It was likewise a question of fact for the jury to determine what was the proximate cause of the injury, whether from the old, worn and dilapidated condition of the cogwheel and other machinery, or the absence of the brake, as the plaintiff claims, or the sudden checking of the speed of the elevator by Kramer, as the defendant claims. Whilst there was no direct testimony that the cogwheel broke because it was old, worn, and dilapidated, it is also true that there was no testimony that the checking of the elevator suddenly, as Kramer did, was sufficient to break the cogwheel. There was evidence that the elevator had not been inspected for quite a while before the accident. Fair-minded men might reasonably differ, therefore, as to the cause of the breaking of the cogwheel. But, however this feature of the case might have been decided, the fact still remains, undisputed, that the brake which was intended to regulate the speed of the elevator was broken and out of order, or at any rate, the rope that operated the brake was broken, and this was some evidence, at any rate, of negligence on the part of the defendant in not furnishing the plaintiff with a reasonably safe appliance. If, therefore, the case had been submitted to the jury, and they had returned a verdict for the defendant, and the court had granted the plaintiff a new trial, it

could not be said that the action of the trial court was subject to review by this court, on the ground that no verdict in favor of the plaintiff could ever be allowed to stand. Without, therefore, considering the doctrine of *res ipsa loquitur* at all, and without expressing any opinion as to that doctrine, it is clear that this case falls within the class of cases in which this court will not interfere with the action of the trial court in granting one new trial.

For the foregoing reasons the judgment of the circuit court is affirmed.

All concur.