J. S. MILES, Respondent, v. (L. F. HANEY, Defendant), H. R. HANEY, Interpleader, Appellant.

Springfield Court of Appeals, May 19, 1915.

1. NEW TRIAL: Verdict Against Weight of Evidence. Where a trial court rules that a verdict "is against the evidence," the ruling amounts to a decision that the verdict is against the weight of evidence.

Miles v. ·Haney.

2. APPEAL AND ERROR: New Trial: When Granted.  An order granting a. new trial on the ground that the verdict is against the weight of evidence should be sustained unless an abuse of judicial discretion appears, and it will not be disturbed, as for an abuse of discretion, if there is substantial evidence in favor of, or such as will sustain a verdict for, the party to whom the new trial is granted.

3. ——: ——: Appellate Court Disposed to Uphold Orders Granting.  There is. less disposition on the part of appellate courts to reverse orders granting new trials than orders refusing them.  It is a discretion that the appellate courts have encouraged trial courts in exercising to prevent a miscarriage of right.

4. NEW TRIALS: Granting: Discretion of Trial Court.  Trial courts, in reviewing verdicts, are not subject to the same rules that govern appellate courts; they may weigh the evidence and if they deem injustice has been done, may grant a new trial, in cases where they would not be justified in taking an issue from the jury and where appellate courts should not interfere.

5. ATTACHMENTS: Interpleas: Burden of Proof.  In interpleas in attachment suits, the plaintiff becomes defendant and the interpleader acts as plaintiff and on him rests the burden of proof.  [Sec. 2345, R. S. 1909.]

6. ——: Ratification of Sale by Process.  Where an attachment proceeding was begun by the seller of certain mules ·for the unpaid purchase price, the seller thereby affirmed the sale and took the place of creditor.

7. NEW TRIALS: Attachment: Interplea.  The seller of mules brought suit to recover the purchase price thereof, attaching the mules in the possession of defendant, a brother of the purchaser. · The evidence and circumstances are reviewed and the trial court is *held* warranted in granting a new trial in favor of the seller and against the brother who interpleaded, · claiming ownership of the mules.

Appeal from Texas County Circuit Court.—*Hon. L. B., Woodside,* Judge.

AFFIRMED.

*Barton & Impey* for appellant.

The interpleader was in possession of the property at the time the attachment writ was levied. and the

burden was on the plaintiff to show that he held a better title and right of possession than that claimed by the interpleader, whose possession under claim of ownership made a prima-facie case in his favor. Fairbanks-Morse Co. v. Stock Food Co., 151 Mo. App. 260, 263; Bank v. Boyer, 161 Mo. App. 143, 156; Pouder v. Colvin, 156 S. W. 483; Merrill Drug Co. v. Lusk, 73 Mo. App. 571, 575.

*Hiett & Scott* for respondent.

(1) In an interplea the burden is upon the interpleader to show that he was the owner of the specific property attached at the time it was attached, or that he had a special interest therein and was entitled to its possession. Torreson v. Turnbaugh, 105 Mo. App. 439; Car Co. v. Banard, 139 Mo. 142; Bank v. Boyer, 161 Mo. App. 143. (2) A ruling of a trial court that the verdict is against the evidence is a decision that the verdict is against the weight of the evidence. Parker v. Cassingham, 130 Mo. 348-350; Laclede Co. v. Tea Co., 95 Mo. App. 412; McWilliams v. Railroad, 172 Mo. App. 318.

FARRINGTON, J.—On May 5, 1914, respondent, J. S. Miles, commenced an action against L. F. Haney for $147, alleged to be the balance due on the purchase price of a span of mules, by filing his petition and affidavit for attachment in the circuit court of Texas county. On the same day a writ of attachment was delivered to the sheriff who executed it by seizing the span of mules, then in the possession of H. R. Haney, the appellant. In due time, H. R. Haney filed an interplea claiming the mules were his at the time of the levy, and this issue was tried to a jury which returned a verdict in favor of the interpleader to the effect that the mules were his property at the time of the institution of the suit and that he was entitled to the possession

of the same, and judgment was entered accordingly. However, the court sustained plaintiff's motion for a new trial and specified the following reasons therefor: "The verdict of the jury is against the evidence; and for further reasons one of the attorneys for interpleader made an improper argument in closing the case in which argument he stated that the Haney boys were worthy sons of a worthy sire, Henry Haney, and one of the best men who ever lived in Texas county and their testimony should be credited by this jury." It has been held that where the trial court rules that a verdict is "against the evidence," the ruling amounts to a decision that the verdict is against the weight of the evidence. [Parker v. Cassingham, 130 Mo. 348, 350, 32 S. W. 487; Laclede Power Co. v. Nash Smith Tea Co., 95 Mo. App. 412, 69 S. W. 27.]

So far as the abstract discloses, no instructions were asked or given except the customary instruction that nine of the jurors might agree on a verdict; hence the theory on which the jury considered the case is left to conjecture. We say this because practically all the testimony introduced was concerning the dispute between plaintiff and defendant—the plaintiff contending, consistently with his petition, that the transaction was a sale of the span of mules and that the purchase price of $215 was to be settled by defendant turning over a note for $58 which he claimed to own and paying the remainder in cash, and the defendant as strenuously insisting that the transaction was a trade of his jennet and the $58 note and $10 thrown in at the last as "boot." This condition of the record is perhaps attributable to the fact that the interpleader opened the case by placing his brother (the defendant) on the witness stand, and he went into all the circumstances.

The issue before us is between the interpleader, who complains because the new trial was granted, and the plaintiff who secured the order granting a new trial for the reasons specified. With such an issue

Miles v. Haney.

the test may be thus stated: An order granting a new trial on the ground that the verdict is against the weight of the evidence should be sustained unless an abuse of judicial discretion appears, and it will not be disturbed, as for an abuse of discretion, if there is substantial evidence in the record in favor of, or such as will sustain, a verdict for the party to whom the new trial is granted. [Clarkson v. Garvey, 179 Mo. App. 9, 161 S. W. 664; Graney v. St. Louis, I. M. & S. Ry. Co., 157 Mo. 666, 57 S. W. 276.] "In other words, in such circumstances, if the case is one in which the proof tends to show a cause of action or a substantial defense which might on a fair trial be accepted by the jury and acted upon in favor of the party to whom the new trial is granted, the appellate court will decline to interfere. This rule obtains, of course, only in cases where there had been but one new trial awarded to the party and it was granted on the judgment of the trial court with respect to the facts in the case, for as to matters of law, such are always open to review." [Rigby v. St. Louis Transit Co., 153 Mo. App. l. c. 336, 133 S. W. 110; see, also, Metropolitan Lead & Zinc Co. v. Webster, 193 Mo. 351, 364, 92 S. W. 79; Seeger v. Silver Co., 193 Mo. 400, 407, 91 S. W. 1030.] Therefore, the question to be decided is this: Conceding all the facts to be as plaintiff shows them to be, and supposing the verdict of the jury was in his favor, could the verdict be permitted to stand?

It is now the settled rule of practice, also, that appellate courts are less disposed to reverse orders granting new trials than orders refusing them. [Parker v. Britton, 133 Mo. App. l. c. 274, 113 S. W. 259; Hopkins v. City of Springfield, 164 Mo. App. l. c. 686, 147 S. W. 1099; Allen v. Railroad, 167 Mo. App. l. c. 506, 151 S. W. 762.] Besides holding that appellate courts are reluctant to interfere in such cases, and that they will not interfere unless the discretion vested in the trial court appears to have been manifestly abused,

it is, as is well said by the Supreme Court in the case
of Lorenzen v. Railroad, 249 Mo. 1. c. 187, 155 S. W.
30, a discretion appellate courts have encouraged trial
courts in exercising to prevent a miscarriage of right.
In Honea v. Railroad, 245 Mo. 1. c. 649, 650, 151 S. W.
119, the court after stating that the discretion would
not be interfered with unless "unmistakably unwisely
exercised," in quoting from McCarty v. Transit Co.,
192 Mo. 1. c. 401, 402, 91 S. W. 132, also adopted the
following language appearing in the. opinion: "The
trial judge stands peculiarly close to the fountain-head
of legal justice. He is the high priest presiding at the
very altar of the temple. To him it is given to hear
the intonation of the voice of a witness, to see his man-
ner, his cast of countenance, the glance of his eye, the
behavior of the jury, their intelligence, their attention
and the whole network of small incidents creating an
atmosphere about a case and tending possibly to a per-
verted result or otherwise, none of which can be pre-
served in the bill of exceptions and sent here, and in
him, therefore, should exist the courage to prevent a
miscarriage of right. His viewpoint is entirely differ-
ent from that of an appellate court." Again, it is held
that trial courts, in reviewing verdicts, are not subject
to the same rules that govern appellate courts, and
that they may weigh the evidence, and, if they think in-
justice has been done, grant a new trial, in cases where
they would not be justified in taking an issue from the
jury; and where appellate courts should not interfere.
[Lockwood v. Atlantic Mut. Ins. Co., 47 Mo. 50.]

It will be noted that all these cases require that
there be some substantial evidence upon which a ver-
dict in favor of the party securing the new trial could
be based, as distinguished from "a mere shadow or
scintilla of testimony," which would not entitle plain-
tiff to go to the jury. [See Haven v. Railway Co., 155
Mo. 1. c. 230, 55 S. W. 1033.]

The repetition in this opinion of the foregoing well-settled principles in our practice is to be excused by the fact that respondent in his brief lays stress upon them and we do not wish to be considered as affirming this judgment without giving them full weight.

The issue in the trial court was as to whether or not the interpleader had title to the span of mules, and the affirmative of that issue was on the interpleader. [Merrill Drug Co. v. Lusk, 73 Mo. App. 1. c. 575.] Under section 2345, Revised Statutes 1909, providing for interpleas in attachment suits, the plaintiff in the attachment assumes the position of a defendant and the interpleader acts as a plaintiff. [Gate City National Bank v. Boyer, 161 Mo. App. 1. c. 149, 142 S. W. 487.]

The interpleader in our case properly assumed the burden of proving his title to the mules. As before stated, plaintiff's theory was that he had sold the mules to the defendant. His position, therefore, necessarily was that defendant obtained title to the mules. Indeed, it is held that by bringing the attachment suit, he affirmed the sale and took the place of a creditor. [Johnson-Brinkman Com. Co. v. Railway Co., 126 Mo. 1. c. 350, 28 S. W. 870.] Appellant argues that since he was in possession of the property at the time of the levy of the attachment writ, under a claim of ownership, this made a prima-facie case in his favor, so that the burden of producing evidence to defeat that claim and to show that the mules were properly subject to the attachment devolved upon the plaintiff. [Fairbanks-Morse Co. v. Stock Food Co., 151 Mo. App. 1. c. 263, 131 S. W. 894; Merrill Drug Co. v. Lusk, 73 Mo. App. 1. c. 575.] The facts in this case, however, show that the two brothers (defendant and the interpleader) both resided and worked together on the same farm. The mules, therefore, whether belonging to the one or the other, would probably be kept and worked by either of the brothers living there when needed, and when one of the brothers would go away on a visit the natural

thing would be for the other to keep and care for them. The evidence that the mules were in the interpleader's possession or keeping under those circumstances is not necessarily to be construed as meaning that unlimited and exclusive possession that is required to make out a prima-facie case of ownership. At most it would be a question for the jury, and if from the evidence the jury might not find that the mules (from such possession) belonged to the interpleader, such evidence was then subject to review by the court on the motion for a new trial.

The interpleader and defendant both testified to a sale of the mules between themselves the morning after the transaction between plaintiff and defendant was consummated. This testimony is to the effect that about an hour after defendant brought the mules home he and his brother (the interpleader) started to "talking trade," and that they took a lantern and went out and looked at the mules and the interpleader said he would buy them if they would work; that if they didn't work gentle he didn't want them; that the next morning they hitched up the mules and worked them around about a mile and they worked all right for young mules, so the sale was made for $215; that they had hitched up about seven o'clock that morning and the sale was consummated about half past eight or nine o'clock during which time they were working the mules and talking about this proposed deal, and that they closed it up when they went back to the house. Defendant testified that he sold the mules to the interpleader, and the latter testified that he bought them and paid the $215 in this manner: Interpleader gave him the $58 note defendant had turned over to plaintiff (the interpleader testifying that the note really belonged to him and not to the defendant); that he gave or advanced the $10 "boot" money to defendant that the latter had turned over to the plaintiff; that he gave the defendant two notes, one for $65 and the other for $30; and the in-

.terpleader referred in his testimony to two checks marked exhibits "A" and "B" (which he evidently had before him but which do not appear in the record), which he testified the defendant had drawn against his (the interpleader's) account; and all of this, it may be inferred, made up the $215. The defendant testified that he took the $65 note to Licking, Missouri, and sought to turn it in to Doctor Randall on a doctor bill, and that the doctor would not take it unless the bank there would take it off his hands; that they went to the bank and the cashier would not take it because it was twelve months' paper; that he (the defendant) then telephoned to his brother, stating these facts, and that his brother (the interpleader) told him to destroy that note and draw another for the same amount to run six months and sign his (the interpleader's) name to it; that he did this and that the bank then bought the paper. This is a summary of the testimony concerning the interpleader's right to possession of the mules.

The evidence offered by the interpleader concerning the transaction between himself and his brother, the defendant, as to a sale as between them, discloses at least that the manner of payment was out of the ordinary, and being out of the ordinary therefore might be viewed by a jury as a suspicious transaction between them under the facts of this case; so much so that had the interpleader been seeking to replevin the mules from his brother a jury would have been justified in finding that the interpleader was not entitled to unqualified possession and therefore that the mules were not owned by him. The court had a right to consider this in passing on the motion for a new trial.

Is there any substantial evidence on the part of the plaintiff as to the issue involved? If there is, it is to be gathered from the testimony of Lance Miles, the plaintiff's son, a young man twenty-two years of age. He testified that he met L. F. Haney, the defendant,

and plaintiff as they were leading the span of mules out of plaintiff's field, and that plaintiff (the father of the witness) told him to help Haney get home with the mules—that Haney didn't bring a check book with him, and for him to go down and get the check and the note, and that Haney then said it would be $157 and the $58 note; that when they reached the Haney home, the interpleader took the mules to the barn while L. F. Haney and the witness went in the house where L. F. Haney gave the witness the note and $10 in money saying he did that so he wouldn't have to write the check so big; that he couldn't find the check book and said he would go out and see his brother, the interpleader, and was gone probably five minutes when the two came back and hunted for the check book; that the interpleader then went out and L. F. Haney called and asked him if he had found it, and that upon being answered in the negative L. F. Haney said: "I'm going to Licking tomorrow; I'll get a check while over there and as soon as I get back will send it to you." The witness further testified that this occurred on Wednesday and that he went to the Haney home the following Sunday and inquired of the interpleader for L. F. Haney, who told him that L. F. Haney was not there and had probably gone to Illinois on a land deal. He then testified as follows: "I asked him if he left that check for us and he said he didn't and I told him to tell him when he came back to come over and see about it, that we wanted the money, and I asked him what his brother was going to do with the mules if he was going to Illinois and Richard said he wasn't going to be gone but two weeks and left them for him to work while he was gone."

The interpleader in the trial court treated this as some evidence that no sale had taken place as between himself and his brother, but that, on the other hand, it was evidence tending to show that the mules still belonged to his brother and had been merely left with

him to work in his (L. F. Haney's) absence; this is shown by the record as the interpleader in rebuttal testified with reference to this conversation on Sunday as follows: "In the conversation with Lance Miles about the time my brother left I did not tell him that my brother had left those mules with me to work. I told him I had bought the mules from my brother."

The declaration which Lance Miles testifies the interpleader made was one against the interpleader's interest, and a jury, if they believed he made such a statement, would be justified in finding therefrom that there had been no sale of the mules as between the defendant and the interpleader.

"Possession, unexplained, is prima-facie evidence of ownership in the possessor. But such possession is entirely consistent with ownership in another; and, therefore, the conduct and declarations of the possessor may be material to show the *nature* of his *possession* whether as owner, part owner or agent." [2 Jones Commentaries on Evidence (Horwitz Ed. 1913), sec. 351, p. 836.]

Under the extremely liberal rules hereinbefore referred to, we think there was substantial evidence in this case upon which a verdict in plaintiff's favor on the interplea could stand; there was a conflict so that the evidence could not be said to have been all one way. [See, Hopkins v. City of Springfield, 164 Mo. App. l. c. 687, 147 S. W. 1099.] We uphold the ruling of the trial court in granting a new trial upon the specified reason that the verdict was against the weight of the evidence; in other words, there is no showing of an abuse of discretion, and the judgment is accordingly affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.