ELLA A. ENSOR, Respondent, v. THOMAS M. SMITH *et al.*, Appellants.

Kansas City Court of Appeals, April 9, 1894.

1. **Trial Practice**: NEW TRIAL: DISCRETION OF COURT. As to when, how, and to what extent, a trial judge may interfere in any case with the verdict of the jury, must depend upon the exercise of a sound discretion, and only when it clearly appears that this discretion has been abused, will the supervisory court interfere.

2. **Appellate Practice**: NEW TRIAL: EXERCISE OF REVISIONARY POWER. The right of revision will be exercised more freely by the appellate court when the trial court has refused than when it has granted a new trial.

3. ————: ————: BURDEN: PRESUMPTION. The burden is cast upon the appellant to show that there has been an abuse of discretion of the trial court, as all presumptions are in favor of the regularity of its proceedings, and the appellant must show there is nothing to justify the order granting a new trial on the ground it specifies or on any other ground in the motion for a new trial.

4. **Trial Practice**: NEW TRIAL: EVIDENCE: CONDUCT OF COUNSEL. On a review of the evidence in this case it is apparent the verdict might have been affected by the conduct of counsel and the witnesses, which conduct the proprieties of the administration of justice do not countenance and it is *held* the verdict was properly set aside, and the fact that respondent's counsel may have been guilty of equally reprehensible conduct, is only an unanswerable reason why a new trial should be granted.

5. ———: REMARKS OF COUNSEL: ADMONITION OF COURT: REMEDY. On the evidence in this case the statements and allusions by counsel to various facts, in proof of which there was no evidence produced, are *held* harmful; and the admonition of the court to keep within the record was not sufficient to repair the damage as the facts required a more radical and drastic remedy. In such cases, if the warning of the court is disregarded, it may, in its discretion, suspend the argument and discharge the jury, or later on set aside the verdict of its own motion.

6. **Trial Practice**: NEW TRIAL: DISCRETION OF COURT. If the trial court believes there has not been a fair trial and there has been a consequent failure of justice it has the undoubted power to set aside its verdict on its own motion without a motion for a new trial.

*Appeal from the Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

AFFIRMED.

*James W. Boyd* and *T. F. Ryan* for appellant.

(1) The court committed error in sustaining respondent's motion for a new trial. The case was properly and legally tried, so far as the respondent is concerned, upon proper and legal evidence and instructions, and the court' made no ruling adverse to the respondent which is in any wise erroneous. The court could only set aside the verdict and grant a new trial for good cause shown on motion of respondent. R. S. 1889, sec. 2240. (2) A verdict in due form and responsive to the issues can not be set aside, unless the court's action is in accordance with the well known principles and rules of law, and the appellate court on examination of the record will reverse the action of the trial court in granting a new trial and direct the order to be set aside and judgment entered upon the verdict, unless it finds that the trial court exercised a sound discretion in accordance with recognized principles and authority. *Hill v. Wilkins*, 4 Mo. 86; *Lovell v. Davis*,

52 Mo. App. 340; *Bowie v. City of Kansas*, 51 Mo. 454; *State ex rel. Albers et al. v. Home*, 10 Mo. App. 307; *State ex rel. Nicholson v. Rombau*, 44 Mo. 590; *State ex rel v. Adams*, 12 Mo. App. 436. (3) There is nothing in the record of the speeches to the jury to which any exception whatever is made or saved by respondent, and, therefore, those matters are not properly before this court for review. *State v. Dusenberry*, 112 Mo. par. X, 293; *State v. McDonald*, 85 Mo. 539; R. S. 1889, sec. 4221; *State v. Stevenson*, 93 Mo. 91. (4) There is no force in the point that Mr. Ryan's remarks, in his speech to the jury, were improper and outside of the record. If improper, he was reprimanded by the court and replied to by the speeches of two attorneys for respondent. Courts will never grant a new trial on account of improper remarks of counsel in the argument of a case, unless said remarks were made in the closing speech and received the sanction of the court by not reprimanding the counsel. *Strauss v. Railroad*, 86 Mo. 421–431; *State v. Emery*, 79 Mo. 463; *State v. Brooks*, 92 Mo. 589. (5) The court, by the record, admits that the case was submitted to the jury on proper and legal instructions and that the verdict is sustained by the evidence. We say the verdict is not only sustained by the evidence but is in accordance with the weight of the evidence and is. for the right party and should, therefore, be sustained.

*Booher & Williams*, *James P. Thomas*, *Willard P. Hall* and *Vinton Pike* for respondent.

(1) The misconduct which vitiated the verdict is an offense of too frequent occurrence, and one which the appellate courts of this state have been compelled to restrain. *State v. Hamilton*, 55 Mo. 522; *Haynes v.*

*Trenton*, 108 Mo. 133, 134; *McDonald v. Cash*, 45 Mo. App. 80; *Bishop v. Hunt*, 24 Mo. App. 377, 378; *Marble v. Walters*, 19 Mo. App. 134; *Railroad v. Randall*, 85 Ga. 297; *McDuff v. Detroit Evening Journal*, 84 Mich. 1; *Huckshold's case*, 90 Mo. 559; *Bank v. Armstrong*, 92 Mo. 265; 16 Am. and Eng. Encyclopedia of Law, 519, and cases cited, note 1; *Shepherd v. Brenton*, 15 Iowa, 91; *Longdon v. Kelly*, 51 Mo. App. 576. (2) "The burden is on appellant to show the discretion has been abused. It is by no means an easy task." Elliott's Appellate Procedure, sec. 604, and notes. Every presumption is in favor of the court's action. *Idem; Henry v. Railroad*, 70 Iowa, 233. (3) There can not be found in the books a case of such gross misconduct, persisted in from the beginning to the end of the trial, against the protest of opposite counsel, and admonition of the court, as we have exhibited here by the appellant's own showing. (4) "The court had the inherent power, independent of the ground of defendant's motion, to grant a new trial for the cause specified in the order." *Lovell v. Davis*, 52 Mo. 347; *Gray v. Railroad*, 3 Mo. Leg. News, 20; *Hewitt v. Steele*, 24 S. W. Rep. 443; *Williams v. Circuit Court*, 5 Mo. 248; 16 Am. and Eng. Encyclopedia of Law, 502, 503, 504. (5) What is said by appellant about the insufficiency of our objections or exceptions is irrelevant. This is not our bill of exceptions. We indicated our objections to their conduct and that was enough. "The other party does his duty when he objects to the wrong inflicted upon him and does not allow it to be understood that he waives his objection." *Perkins v. Burley*, 64 N. H. 524.

Smith, P. J.—This is an action on two promissory notes. The defense interposed by the answer of the defendant, Jane E. Smith, was that of *non est factum.*

There was a trial by jury in the circuit court which resulted in a verdict for the defendant, Jane E. Smith. On motion of the plaintiff the court made an order setting it aside upon the ground, *first*, "of the misconduct of the attorneys for defendant, Jane E. Smith, in continually offering and arguing illegal, irrelevant, immaterial and incompetent evidence as to other forgeries committed by Thomas M. Smith before the court and in the presence of the jury, after the court had ruled that all such evidence was not admissible;" *second*, "because the attorneys for defendant, Jane E. Smith, interrupted the attorney for plaintiff in the latter's argument to the jury, by stating in the presence and hearing of the jury, that we offered to prove other forgeries committed by Thomas M. Smith, and that plaintiff would not let defendant prove the same, objecting thereto." From this order the defendant has appealed.

As to when, how and to what extent, a trial judge may interfere in any case with the verdict of the jury, must depend upon the exercise of a sound discretion; and it is only when it clearly appears that this discretion has been abused, will the supervisory courts interfere. *Huckshold v. Railroad*, 90 Mo. 548; *Bank v. Armstrong*, 92 Mo. 265. As was said by us in *Longdon v. Kelly*, 51 Mo. App. 572, speaking through Judge ELLISON, "at the threshold of plaintiff's (defendant's) case he is met with the strong though not absolutely insuperable barrier of a trial court's discretion in the matter of granting new trials. The books are well filled with declarations by authors and courts which vigorously maintain that this function belongs naturally to the trial court. In plain cases, *free from doubt*, the appellate court will revise such discretion in the plain or apparent interest of justice under the forms of the law."

And it has been declared that the right of revision will be exercised more freely by the appellate court when it has *refused* than when it has granted a new trial (Am and Eng. Encyclopedia of Law), and for the reason, doubtless, that the parties can again go to the jury upon the issue joined and the successful party still has an opportunity to obtain a concurring verdict. *Shepherd v. Brenton*, 15 Iowa, 91.

The burden is cast upon the defendant to show that there has been an abuse of the sound discretion of the trial court. This is by no means an easy task, for in such cases *omnia præsumuntur rite et solemniter esse acta donec probetur in contrarium*. Consequently it devolves upon the defendant to show that there is nothing in the record of the case to justify the order on either the ground it specifies, or any one of the other grounds alleged in the motion for new trial. *Lovell v. Davis*, 52 Mo. App. 342: *Hewett v. Steele*, 24 S. W. Rep. 443. Keeping these principles in view we may now turn our attention to the record to see whether the objection that the court abused its discretion in awarding a new trial of the cause, is well founded or not.

It is stated by defendant that the testimony in the case covers two hundred and sixty-nine type written pages and that she has contented herself with presenting the substance thereof in her abstract of less than one hundred pages. Notwithstanding these facts she insists that we examine the record and revise the action of the court of which she complains. How can we say there is nothing in the evidence to sustain the various findings of the court specified in its order, when only a part of the evidence is before us?

The first specification of the order is, that the attorneys of defendant continually offered and argued irrelevant, immaterial and incompetent evidence as to

other forgeries committed by Thomas M. Smith before the court and in the presence of the jury, after the court had ruled such evidence incompetent. Is there any evidence to sustain this finding preserved in the bill of exceptions, as shown by the confessedly meagre abstract before us? The following brief reference to and quotations from it will, we think, show there is. Witness Enright was called by plaintiff and qualified by stating that he knew defendant's signature by having seen her admitted signature in a transaction in the bank of which he was an officer. Defendant's counsel ejaculated: "We are prepared to show that Jane E. Smith never had any knowledge of that note, and it was a forgery." Plaintiff's counsel also called Tyler, who testified as an expert, etc. On cross-examination defendant's counsel asked him: "Have you a note in your possession now upon which the name of Jane E. Smith has been written by somebody?" Plaintiff's objection was sustained to the question. Counsel for defendant: "I want to show, if possible, that he has an interest in maintaining that suit." "I offer to prove by him that he has such a note." "We want to offer it to show the interest that the witness has in the case." Plaintiff's counsel asked him by whom he was subpœnaed? A. "On the part of the defendant." Defendant's counsel: "To bring that forged note in?" A. "I was not subpœnaed to bring anything." Defendant called Robert Poteet, and attempted to prove by him that Thomas Smith was an expert penman. Before the court could rule on plaintiff's objection thereto, defendant's counsel said to the witness: "I'll get you to state, Mr. Poteet, if he ever forged your name so as to deceive experts?" And the witness answered: "Yes, sir; he did." Defendant's counsel then volunteered the testimony, "We have a number of witnesses to prove the same point, and we desire to consider it

as offered." It further appears that defendant called Charles Thompson, a deputy clerk, having charge of the indictments pending in the criminal court, who testified as follows:

"*Q.* Have you the—.

*Mr. Pike.* "Your honor knows what they are driving at. It is improper."

*Mr. Boyd.* "We want to introduce these papers in evidence. We think we have a right to do it."

*The Court.* "I don't know what paper you have referred to."

*Mr. Boyd.* "It is a paper that is called an indictment."

*The Court.* "You can't do it."

*Mr. Boyd.* "We offer to do that and except to the rulings of the court."

*Mr. Ryan.* "We offer to prove—"

*The Court.* "You needn't make that offer before the jury. Put your offer in as full as you want in the record."

*Mr. Ryan.* "The understanding is that the offer can go into the record covering all that point just as fully as we want it."

*Mr. Thomas.* "I would like for it to appear whether you offer anything that pertains to this case; the notes in suit or not."

*Mr. Boyd.* "We are offering it on the ground that it pertains to a series of notes and I have a decision in my hand which I think holds that we have a right to do it. I want to show a series of transactions, which make up a system on the part of a certain man in reference to Mrs. Smith's name."

*The Court.* "The objection is sustained."

*Mr. Ryan.* "We want to show this in connection with that. We offer to show that as a renewal note of the note sued upon, there was a forged note of $2,000

signed by T. M. Smith, with the name of Jane E. Smith, this defendant, upon that note. We offer to show that that note is a forgery, and a part of this transaction. We offer to show, further, that that note was sued upon, and that it, said suit, had been dismissed in this court with the knowledge of the plaintiff that it was a forgery."

*The Court.* "That has nothing to do with this case."

*Mr. Ryan.* "We except."

*The Court.* "The only issue in this case is whether or not she signed this note."

*Mr. Thomas.* "You don't offer to show in this offer that anybody has ever been convicted of forging Mrs. Smith's name?"

*Mr. Ryan.* "No, but we do offer to show in this offer that he was indicted by the grand jury."

The defendant's counsel pleaded as an excuse for the manner and style of warfare which the foregoing excerpts taken from the abstract indicate was carried on by them before the jury, a like misconduct of the plaintiff's counsel. Without undertaking to be specific, we may say that it does seem from the light glimpses afforded by the record of their conduct later on during the trial that the allegations of the defendant's counsel are not entirely groundless.

It is apparent that the verdict might have been affected by the conduct of counsel and the witnesses to which we have referred. The proprieties of the administration of justice do not countenance such behavior of counsel while conducting the trial of a cause. We think in order to maintain its own dignity and preserve the purity and orderly administration of justice, the court was bound to set aside the verdict; and the fact urged by the defendant that the counsel of the plaintiff were equally reprehensible with her

own, instead of furnishing a ground for challenging the action of the court emphasized the propriety, if not the necessity, of such action. If both parties participated in the misconduct of the trial this is an unanswerable reason why the trial should come to naught. It seems to us that there is ample, in the record to justify the court in finding the facts recited in the first specification of the order.

The bill of exceptions states that the case was argued before the jury and that Mr. James P. Thomas, one of the attorneys for the plaintiff, made the first speech for the plaintiff. Mr. Thomas F. Ryan made the first speech for the defendant and Mr. I. R. Williams made the second speech for plaintiff and was followed by Mr. James P. Boyd, for the same defendant, after which Mr. James P. Thomas made the closing speech in the case on behalf of the plaintiff.

Mr. T. F. Ryan, attorney for the defendant, used the following language in the course of his argument for the defense, to wit: "Gentlemen of the jury: Mr. Thomas says: 'You have heard a good deal said about other forged notes. There is no evidence that any note was forged, and the only notes that you have anything to do with are the notes sued on, and if these notes were forged I want to ask you why Smith would pay off the genuine and leave the forged notes unpaid?' I say to you, gentlemen of the jury, that our position is that none of these notes were genuine. That they were all forged and that he took up the two thousand dollar note with money which he received on other forged notes, and if, we were permitted to do so, we would be able to show it. If the gentlemen hadn't objected to it and we were permitted to do so, we would be able to show it."

To which remarks of Mr. Ryan the plaintiff's attorneys objected, which objection was sustained by

the court, and Mr. Ryan was ordered to proceed by the court and to keep within the record and make no reference to any other notes, except the ones sued on, as that was the only matter for the jury to consider. Whereupon Mr. Ryan asked the court to permit him to show that he was within the record in what he said, but the court directed him to go on with his speech and to keep within the record.

Again, during Mr. T. F. Ryan's argument to the jury on the part of the defendant, he used the following language: "My God! is the property left by O. M. Smith to his widow to be swept away from her and she to be thrown out on the cold charities of the world by being compelled to pay a series of forged notes, forged by this villain, T. M. Smith?" "If this jury brings in a verdict against her, it will only be the beginning of forged notes she will be compelled to pay." "We call on this jury and implore you not to permit her to be robbed of the property left by her husband."

During the closing arguments by Mr. J. P. Thomas to the jury he (Thomas) was urging upon the jury the fact that the only issue for them to try was whether or not the notes in controversy were executed by Jane E. Smith. He said: "Gentlemen of the jury, it has never been established by the verdict of any jury that Thomas M. Smith ever forged the name of Jane E. Smith." "There is no evidence before you (under the rulings of this court) that Jane E. Smith's name has been forged." "It is your duty under the instructions and under your oath to disregard any such intimations by the opposing counsel in this case." Whereupon Thomas F. Ryan, for defendant, arose and interrupted Mr. Thomas, saying: "Didn't we have the notes here in court and offered to prove that they were forgeries?" "Haven't we offered to prove that T. M. Smith was a forger, and in jail for forging Mrs. Smith's name?" "Didn't we

offer to prove that he was guilty of a series of forgeries? and didn't you object?" Wanted all the facts out in this case and you objected."

In the portions of the argument and remarks of counsel to the jury which have just been quoted, it is seen that statements and allusions to various facts, to prove which there was no evidence adduced, were made, which it seems to us, were calculated to do much harm. The admonition of the court to counsel to keep within the record was not sufficient to repair the damage which probably resulted. When the mind of the jury is being swayed by the use of perverted and conjectured facts and the influence of zealous and impassioned advocacy, the conditions may require the application of a far more radical and drastic remedy than that administered by the court. If the warning of the court is disregarded it may, in its discretion, then suspend the argument and discharge the jury, or omitting to do that, it may later on set aside the verdict on its own motion. In the recent case of *Smith v. Telegraph Co.*, 55 Mo. App. 626, where it appeared that counsel for the plaintiff in his argument before the jury persisted in making a statement of facts, which were not disclosed by any evidence, and in commenting thereon, it was held that such behavior was an abuse of the license of speech by counsel and a sufficient ground for reversing the judgment.

In the management of a cause the largest and most liberal freedom is allowed counsel and the law protects him in it. "The right of discussing the merits of the cause both as to the law and the facts is unabridged, the range of discussion wide. He may be heard in argument upon every question of law. In his addresses to the jury it is his privilege to descant upon the facts proved or admitted in the pleadings; to arraign the conduct of the parties; to impugn, excuse, justify or con-

demn motives so far as they are developed in evidence; assail the credibility of witnesses when it is impeached by direct evidence or by the inconsistency or incoherence of their testimony, their manner of testifying, their appearance on the stand, or by circumstances. His illustrations may be various as the resources of his genius; argumentation as full and profound as his learning can make it; and he may, if he will, give play to his wit or the wings of his imagination." *Mitchum v. State*, 11 Ga. 613. But while this broad and comprehensive license is accorded counsel, it is nevertheless subject to the restrictions that they must "keep within the record" as to the facts. In condemning the practice of undertaking to get that in as proof which is merely conjecture it was said in *Berry v. State*, 10 Ga. 522, by the great judge who delivered the opinion in the case: "Why then resort to such a subterfuge. Does not history, ancient and modern; nature, art, science and philosophy; the moral, political, financial, commercial and legal worlds—all open to counsel rich and inexhaustible treasures for illustration? Here under the fullest inspiration of excited genius they may give vent to their glowing conceptions in thoughts that breathe and words that burn. Nay, more, giving reins to their imagination they may permit the spirit of their heated enthusiasm to swing and sweep beyond the flaming bounds of space and time, *extra flammantia mœnia mundi*. But let nothing tempt them to pervert the testimony, or surreptitiously array before the jury, facts which, whether true or not, have not been proved."

As has already been remarked, a motion for a new trial is addressed to the equitable discretion of the court to prevent palpable wrong, but the court without such motion has the inherent power to grant a new trial on account of the causes specified in the order. If

the court believes that there has not been a fair and impartial trial of a cause and consequently a failure of justice it has the undoubted power to set aside the verdict on its own motion for any good cause. *Hewett v. Steele, supra.* We are unable to bring ourselves to the conclusion that the defendant has, by any showing that she has made, met and overturned the presumption which we are obliged to indulge in favor of the soundness of the discretion exercised by the court in awarding a new trial. On the contrary we think, unaided by the presumption that obtains in such cases, that the action of the court finds abundant support in the facts shown by the record. It was a fitting and effective rebuke for the unwarranted abuse of the license of counsel in the management of their case. It was made necessary to maintain the dignity of the court and the protection of the right to a fair and impartial trial by jury. We do not think that it was an abuse of the discretion lodged in the court for it to set aside the verdict rendered under the circumstances shown by the record.

Ingenious counsel for defendant have, in a very able brief, urged upon our consideration a number of reasons, some of which are quite persuasive, why the verdict of the jury ought to be reinstated, but, after all, they are unable to relieve it of the suspicion, still lingering in our mind, that it may have been affected by the improper conduct of counsel, nor can we say in view of the entire record before us, that the case is sufficiently plain and free from doubt as to warrant our interference with the discretion exercised by the trial court, or that it is required by the interest of justice that we do so.

In this view we feel that it is perhaps our duty to let the order stand to the end that the cause may be tried again, and therefore affirm it. All concur.