OLLIE ALLEN, Appellant, v. ST. LOUIS & SAN FRANCISCO RAILROAD CO., Respondent.

**Springfield Court of Appeals, December 2, 1912.**

1. **PRACTICE: Granting New Trial: Newly Discovered Evidence: Diligence.** In an action for damages for personal injuries which plaintiff alleged she received while a passenger on one of defendant's trains, the verdict of the jury was for the plaintiff. Defendant, in its motion for new trial, set up the newly discovered testimony of plaintiff's sister and from the affidavit of the sister it appeared that plaintiff's injuries were feigned and she only pretended to be hurt for the purpose of getting damages from defendant. *Held*, that the defendant in order to show proper diligence would not be expected to invade plaintiff's own home and interview the members of her household to procure evidence against her and that the trial court properly granted defendant a new trial on this newly discovered evidnce.

2. **APPEAL AND ERROR: Granting New Trial: Discretion of Trial Judge.** The duty of granting a new trial rests peculiarly and specially within the sound discretion of the trial judge and when a new trial has been granted, the appellate court will examine such action of the trial court with less scrutiny than if it had been refused and will reluctantly interfere unless it is apparent that the discretion of the trial judge has been abused or that injustice has been done.

Appeal from Oregon Circuit Court.—*Hon. W. N. Evans,* Judge.

AFFIRMED.

*E. P. Doris* and *Orchard & Cunningham* for appellant.

(1) An application for new trial, on the ground of newly discovered evidence must show diligence has been used. Barry v. Blumenthal, 32 Mo. 45;. Shaw v. Besch, 58 Mo. 107. (2) An application for a new trial upon the ground of newly discovered evidence must show that the party has used all due diligence, and that the evidence is competent, material and not cumulative. Miller v. Whitson, 40 Mo. 102; Tilford v. Ramsey, 43 Mo. 421; Anyder v. Burnham, 77 Mo. 55; McKin v. Railroad, 45 Mo. App. 88; James v. Furnishing Co., 77 Mo. App. 47; Hanly v. Association, 69 Mo. 383; Summers v. Insurance Co., 90 Mo. App. 704; Carrigan v. Brady, 38 Mo. App. 659; State v. McLaughlin, 27 Mo. 111; McDaniel v. Emmick, 149 Mo. App. 277; Summers v. Keller, 152 Mo. App. 640.

*W. F. Evans, W. J. Orr, Green & Wayland, George Miley* for respondent.

(1) In view of this record, how can it be urged that the trial court abused its discretion in granting a new trial herein? Sommerville v. Stockton, 77 S. W. 298; McCarty v. Transit Co., 91 S. W. 132; Delaplain v. Kansas City, 83 S. W. 71; Lovenhart v. Railroad, 88 S. W. 758; Queensware Co. v. Smith, 80 S. W. 592; Casey v. Transit Co., 85 S. W. 357; Stephens v. Lumber Co., 73 S. W. 292; Hill v. Telephone Co., 80 S. W. 3. (2) Quoting with approval from the Supreme Court, the Kansas City Court of Appeals in Blake v. Insurance Co., 112 S. W. 1000, said: "The granting of new trials because of evidence subsequently discovered rests for the most part with the trial court, and any doubt as to whether the discretion vested in this regard in that tribunal has been soundly exercised is to be resolved in favor of its ruling. It is only in a case entirely free from any element of uncertainty as

to the impropriety of such ruling that appellate courts feel themselves called upon to interfere. Cook v. Railroad, 56 Mo. 380; State v. Sansone, 116 Mo. 1, 22 S. W. 617; State v. Morgan, 96 Mo. App. 343, 70 S. W. 267.

NIXON, P. J.—This is an action to recover damages for personal injuries which the appellant claims to have suffered by reason of the negligence of the agents and servants of the defendant railroad company while she was about to leave defendant's passenger train at the town of Koshkonong, Missouri.

The portion of the petition charging negligence is as follows:

"That on said 3d day of December, 1911, this plaintiff purchased a ticket from the station agent at Thayer, Missouri, good for one passage from Thayer, Missouri, to Koshkonong, Missouri; that on said date she boarded defendant's passenger train at the city of Thayer, to ride to the town of Koshkonong; that the porter of said train, who was employed by said defendant company, came into the car in which plaintiff was seated, and riding therein as such passenger as aforesaid and called out the station of Koshkonong and picked up the step which is set down in front of the steps of the car and started out with it; that soon thereafter the said train stopped and quite a number of passengers who were riding thereon started towards the door to alight from said train and went as far as the platform; that this plaintiff, believing said train had stopped for the station and plaintiff, acting on the information given by said porter, as aforesaid, and believing said train had stopped at the platform at the station of Koshkonong, went out on the platform of the passenger coach in which she was riding as aforesaid, for the purpose of alighting therefrom; that several parties were in front of her on the platform and she was unable to alight at that time; that while she was standing on said platform, waiting

for an opportunity to alight from said train, said train started to move either backward or forward (and plaintiff is not sure which) with a sudden and violent jerk without any warning whatever from any source to this plaintiff that said train was about to move, the force of which caused this plaintiff to be thrown violently backward into the door of the passenger coach, her head striking the door a violent blow and her body being thrown violently to and upon the floor of the passenger coach, whereby and by reason thereof she received serious injuries in her head, back, spine, side and breast; that the injuries suffered by this plaintiff, received in the manner aforesaid, were caused solely by the gross neglect of the defendant company in calling out the station by its said porter in the manner and at the time aforesaid and in failing to warn plaintiff of the danger in attempting to alight at the time and place aforesaid in starting said train backward or forward as the case may be, with a violent and sudden jerk without warning to this plaintiff.''

Immediately after the accident (on December 3, 1911, at about two or three o'clock a. m.) plaintiff was removed to her home at her father's house in Koshkonong, where her sister, Mrs. J. E. Dewberry, also resided.

At the trial, plaintiff stated as a witness that as a result of the fall she received injuries to her head, and back in her spine, and that there was a contusion or bruised place on her head; that about eight o'clock a. m. after the accident, she called a physician, Doctor Barnes, to wait on her on account of the injuries she had received. She testified he did not examine her very much. On cross-examination, this question was asked: ''You did not call his attention to this bruised place?'' The answer was: ''I said I don't know whether I did or not. I was sick.'' About a month later, she called another physician on account of her injuries, named J. K. Cantrell, and she testified that she showed

the bruised place to him and that at that time it had not healed. She testified that she couldn't state that it left a scar as it was in her hair. Doctor Barnes was not called as a witness in behalf of the plaintiff. Doctor Cantrell testified for the plaintiff that he made a physical examination of her person about the fifth day of January, some thirty days after the accident, and for that purpose removed her clothing; that in this examination he found no abrasion or bruise about her head; that he found only a little bruise on the left side of her back; that she complained of a pain or pressure of the spine in the muscles of her back when he pressed her lumbar muscles; that she also complained about her head—that when under pressure it produced pain.

Plaintiff also introduced three witnesses who were on the train or at the depot at the time the accident is alleged to have occurred. None of these corroborated her version of the accident as to the train having stopped and then started again with a jerk. Anse Owens testified that he was on the train the night she fell; that at the time, she was back of him and he did not see the fall but heard it, and that she was at that time about half way out; that she "just kinda slipped down again when he saw her and it seemed like she fainted." He did not see her lying on the floor. He stated that when they arrived at Koshkonong he did not notice any jerking of the train; that the train may have given a jerk and the witness not have noticed it. Charles Thoman testified for the plaintiff that he was at the depot at the time the accident is said to have happened. He stated that the chair car of that train usually stopped at the end of the station, but that on this night they ran down to the other end of the depot and stopped very suddenly; but, that after the train stopped it did not start up until it pulled out. He testified in part as follows: "At the time I saw the woman she was lying down in the car with her limbs out on the platform and her body back in the car; I could

not see her face, but I did see her after they took her off the train, at which time she acted as though she was hurt; she did not seem to be conscious, but kind of dazed, and complained about her head. I first thought she was under the influence of liquor until she complained about her head.'' Adam Bledsoe testified for the plaintiff that he was up at the baggage car at work and when he got down they were helping the plaintiff out of the waiting room, at which time she was complaining about her head; that he helped take her home and that when he left her she was complaining about her head; that he didn't know whether the train stopped more than once or not.

The plaintiff also introduced evidence tending to show that she was kept in her bed some four or five weeks and had been under treatment and unable to do any work by reason of the injuries she had received. Several witnesses testified in her behalf that during this time she was complaining of injuries in her neck and back, but these persons saw no injuries and knew nothing as to her having been injured except what she stated.

The defendant introduced several witnesses who testified that they were on the train at the time the injury took place and that the train made the usual stop in the usual manner and that there was no sudden jerking either in stopping or starting the train. R. J. Capshaw and Sherman Tolliver were the only ones who saw the plaintiff on the train at the time she fell and they testified that they saw her fall and that there was another passenger behind her named Hosea Pate and that plaintiff at the time the train came to a stop staggered against Hosea Pate and her head struck against the man and she went to the floor, and that there was no jerking of the train.

The defendant also put in evidence the plaintiff's general reputation for virtue and no effort was made

by the plaintiff to contradict the evidence of these witnesses that her reputation for virtue was bad.

The verdict of the jury was for the plaintiff in the sum of five hundred dollars.

The defendant moved for a new trial and among other grounds set up the newly discovered testimony of Mrs. J. E. Dewberry, the plaintiff's sister. Her affidavit was produced and filed with the motion for a new trial in which affiant stated that about a year prior to the time plaintiff claims to have been injured, a Mrs. Arnold who resided near the place where the plaintiff resided at that time got hurt on one of the trains of the defendant and was paid damages by the defendant company; that the plaintiff, upon learning that Mrs. Arnold had received some money from the railroad company said that she, the plaintiff, was going to get hurt on the train and sue the defendant for big damages. That on Friday prior to December 3, 1911, the plaintiff went to Thayer to visit Mrs. Lina Allen and before plaintiff left Koshkonong she told her sister, the said Mrs. Dewberry, to write to her, the plaintiff, the next day telling her to come home at once and to use as a reason that the son of the plaintiff named Willie was sick and was worse, when as a matter of fact said boy Willie was not and had not been sick at that time, and that before plaintiff left the town of Koshkonong to go to Thayer at that time, she gave to said witness, Mrs. Dewberry, a stamped postal card on which to write said message; that said Mrs. Dewberry did write said postal card the next day, saying in substance what the plaintiff had directed her to say, and said witness requested said son of plaintiff to mail said card to his mother, but said boy refused to do so and that the father of plaintiff did mail said postal card; that plaintiff told said witness to have said card mailed as aforesaid. That plaintiff was brought home on the morning of December 3, 1911, at two or three o'clock by Isaac Ammerman, who is mar-

ried to a cousin of plaintiff, and Ollie Bledsoe, who is a second cousin of plaintiff. That after they had left plaintiff at the house, plaintiff sat by the stove awhile talking to said witness and that plaintiff told said witness about what a good time she had at Thayer on that trip, and that after talking for a considerable time plaintiff took off her clothes and went to bed without any assistance and did not complain of any injury. That said witness at that time remarked to plaintiff, "You are not hurt," and that plaintiff laughingly replied, "You cannot always tell." That the next morning plaintiff said to witness, "I guess I had better stay in bed and send for Doctor Barnes." That after Doctor Barnes had come and gone, plaintiff did not return to bed again, and that plaintiff said to witness at that time that she wanted witness to wait on her and she would fix her up all right for it, saying, "If there is a chance to get a stake, let me go to it." The said witness will testify (so the affidavit reads) that plaintiff was not hurt by the alleged accident, but was only pretending to be hurt for the purpose of getting money or damages from the railroad company. That plaintiff stayed at home for two weeks after the alleged accident during which time she stayed up around the house as well as she ever did excepting when visitors would come to the house and then she would get in bed and complain of pain, but would ge' out of bed again as soon as such visitors were gone

It is apparent from reading her affidavit that the testimony of Mrs. Dewberry is material evidence for the defense. The only serious objection urged is that no diligence is shown by the defendant in obtaining the evidence of this witness. In its affidavit accompanying the motion for a new trial defendant stated that no knowledge of the facts referred to in the affidavit of Mrs. Dewberry came to the knowledge of the defendant or any of its agents or attorneys or officers until since the trial of the case, and that it was not

due to any lack of diligence on the part of the defendant that it was not learned sooner. When it is considered that this newly discovered evidence came from the plaintiff's own sister, a reason is apparent why the defendant should not have sooner discovered it; and it may be said that the defendant would not be expected to invade the plaintiff's own home and to interview the members of her own household to procure evidence against her.

The rule has been announced in Missouri with wearisome repetition that trial judges have a wide discretion in granting new trials in order to accomplish justice—that the duty of granting a new trial rests peculiarly and specially within the sound discretion of the trial judge—and that when a new trial has been granted, the appellate court will reluctantly interfere unless it is manifest and apparent that the judicial discretion of the trial judge has been abused or that injustice has been done. [Parker v. Britton, 133 Mo. App. l. c. 274, 113 S. W. 259; Lee v. Knapp & Co., 137 Mo. 385, 38 S. W. 1107; Kuenzel v. Stevens, 155 Mo. 280, 56 S. W. 1076; Iron Mountain Bank v. Armstrong, 92 Mo. 265, 4 S. W. 720; Ensor v. Smith, 57 Mo. App. 584.] Where a new trial is granted by the court below, an appellate court will look at it with less scrutiny than if it had been refused. [Bloch Queensware Co. v. Smith, Saxton & Co., 107 Mo. App. 13, 80 S. W. 592; Udden v. O'Reilly, 180 Mo. 650, 79 S. W. 691.]

After an examination of the whole record in this case, we are unable to say that the learned trial judge who saw the witnesses and who knew all the circumstances leading up to and surrounding the trial abused his discretion in granting a new trial. The order granting a new trial is accordingly affirmed. All concur.