BY THE

ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1913.

---

FREDA VAN LOON, Appellant, v. ST. JOSEPH
RAILWAY, LIGHT, HEAT & POWER COM-
PANY, Respondent.

Kansas City Court of Appeals, October 6, 1913.

1. NEW TRIAL: Practice, Trial: Power of Judge to Grant.
Where one new trial has been granted on the ground that the
verdict is against the weight of the evidence, the court has no
power to grant another new trial on that same ground. And
the fact that misconduct of the jury in the first trial was given
as an additional reason for setting that verdict aside will not
change the rule.

2. ———: ———: ———: Attempt to Influence the Jury.
But where the second verdict is set aside by the trial judge
because it was clearly proven to him that an atempt to im-
properly reach and influence the jury was made, and the cir-
cumstances are so suspicious, in the opinion of the trial judge,
that such attempt was not only made but was accomplished,
that he is led to set aside the verdict on that ground, the fact
that he took into consideration that the verdict was against
the weight of the evidence as a circumstance tending to con-
firm him in such view, will not take away from him the power

174 Mo. App.]        (372)

to set aside the second verdict and grant a new trial. In such event the verdict may be said, in legal effect, to indicate misbehavior on the part of the jury, and so bring the case within one of the exceptions contained in the statute forbidding the granting of more than one new trial.

3. ———: ———: ———: Discretion of the Trial Judge. Where a verdict is set aside by the trial judge because he is of the opinion improper influences have been exerted, sound public policy requires the appellate court to uphold his action if possible. The trial court is in a better position than anyone else to see and know what is going on, and his action in granting or refusing a new trial ought to be followed if the trial judge exercised his own judgment and did not clearly display a wholly unsound discretion.

Appeal from Buchanan Circuit Court.—*Hon. W. K. Amick*, Judge.

AFFIRMED. TRANSFERRED TO SUPREME COURT.

*Ferrell & Mayer* for appellant.

*R. A. Brown* for respondent.

TRIMBLE, J.—Appellant sued for damages alleged to have been caused by a fall received while attempting to alight from defendant's street car. The charge is that the fall was brought about by the careless jerking or sudden starting of the car while appellant was in the act of stepping off. The answer was a general denial and a plea that her injury, if any, resulted from her own negligence in stepping from the car before it came to a stop.

At the September term, 1908, the case was tried before Judge Ramey and a jury, and a verdict was returned against respondent for $5700. This verdict was set aside by the trial court "for the reasons that the verdict is against the weight of the evidence, and for misconduct of the jury in arriving at said verdict."

Thereafter the case was twice tried, once at the May term, 1909, and again at the January term, 1910, each time resulting in a hung jury.

At the May term, 1911, the case was tried for the fourth time, and a verdict was returned for appellant in the sum of $4000.

A motion for new trial was in due time filed, the grounds, of which, among others, were that the verdict was against the weight of the evidence; that it was so grossly against the overwhelming weight of the evidence as to shock the conscience and indicate that the jury was influenced by passion and prejudice and did not consider the evidence in the case or the instructions of the court; that the verdict was out of all proportion to the injuries proved and was so excessive as to shock the conscience and indicate that the jury disregarded both the evidence and instructions and returned a verdict based on passion and prejudice rather than on the law and the evidence; that improper and unlawful methods were employed to induce members of the jury to find a verdict for the plaintiff; that one J. Elliston made certain efforts to see and influence the jury in favor of plaintiff during the trial; that he had a list of the jurors and was endeavoring to reach them and improperly influence them in plaintiff's favor, but that he failed to reach the juror he was attempting to reach when discovered; that, during the trial of the case, a certain man named in said motion, and who was friendly to and apparently deeply interested in plaintiff's side of the case, was frequently in the court room observing the conduct and progress of the trial, consulting with persons interested in plaintiff's case, and frequently talked with one of the jurymen, and that said actions and conversations so aroused the suspicions of defendant's officers that one of them went to the man and told him his actions had been observed and commented upon, and that they were not consistent with disinterested motives, and requested him to let the jury alone and not attempt to interfere further in the case, but that said person did not comply with the request but continued to visit saloons and theaters

with said juror at night during the trial and before
the rendition of the verdict; and that such facts were
reported to the trial judge during the trial.

Various affidavits were filed in support and also
in opposition to the motion for new trial. Two of
respondent's affidavits, stating that neither respond-
ent nor its attorneys learned of the attempt of said
Elliston to reach or influence the jury until after the
verdict was returned, were not filed within the time al-
lowed by the court for filing affidavits. And objection
is made by appellant to said two affidavits for that rea-
son. These two were filed before the motion was
passed on, and by permission of the court. It being
within the discretion of the court whether he should
·allow them to be filed and considered, and he having
done so, his action in that regard cannot be reviewed
by us.

After having said motion for new trial under ad-
visement for some time, the trial judge sustained the
same, and had his reasons therefor entered of record
as follows:

"All the points presented by the defendant in
this motion for a new trial are overruled, except that
the court says as follows:

That the verdict in this case is against the weight
of the evidence, both as to the injuries and as to the
facts creating a liability. However, a verdict in this
case has been set aside once before on the ground that
it was against the weight of the evidence, and the
court would not disturb the verdict on that ground
except for the fact that a party by the name of Jay
Elliston, on behalf of the plaintiff, made an attempt
to influence one of the jurors; that he did not reach
the juror that he attempted to influence, but that he had
with him a card to which he referred, upon which he
apparently had the names of several persons, presum-
ably jurors; that he was making an effort to influence
this juror on behalf of the plaintiff, and the circum-

stances are so suspicious with reference to this party, Mr. Elliston, that in view of the fact that this verdict is against the weight of the evidence and in view of these suspicious circumstances with reference to the jury, the court sets this verdict aside. The juror attempted to be influenced was Juror Kendall, who did not sign the verdict.'' From the order granting defendant a new trial, plaintiff appealed.

Appellant's contention is that the court had no right to grant a second new trial on the ground that the verdict was against the weight of the evidence. The trouble with this contention is that it assumes that the circuit judge set the verdict aside on this ground. But did he set it aside because the verdict was against the weight of the evidence, or did he set it aside *because of the alleged attempts to influence the jury "and in view of these suspicious circumstances with reference to the jury?"* It cannot be denied that, in expressing his reason for granting a new trial, the judge was not as clear, precise and accurate as he might have been; and therein he has caused us much trouble. At first glance it would seem, in reading the reason given, that the judge is really setting aside the verdict on the ground that it is against the weight of the evidence and has seized on the conduct of Elliston as a means of getting around the statute forbidding another new trial. But we cannot impute such conduct or motive to him unless his language is so plain as to admit of no other construction. And a slight analysis shows that his language will not bear such an unhappy interpretation.

A reasonable interpretation of the trial court's language shows that he set the verdict aside because of the "suspicious circumstances" and the improper influences felt by the judge to be in the atmosphere. And he considered the fact that the verdict was against the weight of the evidence, both as to the facts creating liability and as to the injuries, *only as a strong*

*circumstance going to show that all was not right,* and consequently in the interest of justice, he felt that he ought to set the verdict aside. He did not set it aside because the verdict was against the weight of the evidence, but because he had, to his mind, positive proof that improper influences had been exerted, and he considered the verdict against the evidence as a circumstance convincing him that the improper influences had been successful. In such case what right have we for disturbing his action on appeal? If his suspicion of improper influences being exerted and reaching their mark have a basis in fact and not in mere wild fancy, and is so strong as to lead him in the exercise of judicial discretion to set the verdict aside on account thereof, can we interfere with such discretion in the absence of a showing that it was unsoundly exercised? If we do, then we establish a precedent that although a circuit judge has grounds for thinking things are not right in a trial before him and sets aside a verdict on account of improper influences surrounding the trial, yet the appellate court will undertake the task of reviewing his action although it is within his discretion and, so far as we are able to tell, he has soundly exercised it. This would be a dangerous precedent to establish. No one is in a better position than the trial judge to know what is in the air and what is going on from the facts laid before him.

We must remember that this is a case where the judge *sustained* the motion. That is, he was so impressed with the existence of the matters calling for a new trial that he granted it. It is not a case where the judge has considered the matters and, in the exercise of his own best judgment, has overruled the motion. If that were the case, we could readily say that the suspicious circumstances were not sufficient to overturn the verdict since the trial judge found they were not. In other words, if the trial judge exercised his judgment and discretion and found no reason for setting

the verdict aside, that ruling ought not to be disturbed
by an appellate court whose judges do not see the
witnesses, nor hear the trial, nor feel the atmosphere
surrounding it, nor perceive the circumstances sus-
picious or otherwise attendant thereon.  But, on the
other hand, if the trial judge *does* think the verdict
should be set aside, ought not the appellate court to
defer also to his discretion, when he exercises it, in
granting a new trial?  We think we should, unless the
facts on which he bases his action are so utterly in-
sufficient as to show that the discretion he exercised
was wholly unsound.  In Allen v. Railroad, 167 Mo.
App. 498, 151 S. W. 762, Judge Nixon of the Spring-
field Court of Appeals said:

"The rule has been announced in Missouri, with
wearisome repetition, that trial judges have a wide
discretion in granting new trials, in order to accom-
plish justice; that the duty of granting a new trial
rests peculiarly and specially within the sound discre-
tion of the trial judge; and that when a new trial
has been granted the appellate court will reluctantly
interfere, unless it is manifest and apparent that the
judicial discretion of the trial judge has been abused,
or that injustice has been done.  [Parker v. Britton,
133 Mo. App. 274, 113 S. W. 259:  Lee v. Knapp & Co.,
137 Mo. 385; 38 S. W. 1107; Kuenzel v. Stevens, 155
Mo. 280, 56 S. W. 1076; Iron Mountain Bank v. Arm-
strong, 92 Mo. 265, 4 S. W. 720; Ensor v. Smith, 57
Mo. App. 584.]    Where a new trial is granted by the
court below, an appellate court will look at it with less
scrutiny than if it had been refused.  [Bloch Queens-
ware Co. v. Smith-Saxton & Co., 107 Mo. App. 13, 80
S. W. 592; Udden v. O'Reilly, 180 Mo. 650, 79 S. W.
691.]"  As the case now before us is one where the
trial judge *sustained* the motion, the cases cited as
holding certain conduct to be insufficient grounds on
which to *reverse* the trial judge's action are hardly
applicable.

But it is urged that section 2023, Revised Statutes of Missouri 1909, forbids the granting of more than one new trial, and there having been one new trial granted heretofore, this precludes the granting of a second new trial.   That section reads as follows: "Only one new trial shall be allowed to either party except, first, where the triers of fact shall have erred in matters of law, second, when the jury shall have been guilty of misbehavior."   This undoubtedly means that there is no limitation on the granting of a second new trial if either one of them is granted on grounds stated in the first or second exceptions contained in the statute.   In Kreis v. Railroad, 131 Mo. 533, it was held that this section did not forbid the granting of one new trial to either party on the ground of the insufficiency of the evidence regardless of the number of new trials that may have been granted such party on other grounds.   In fact, by the very terms of the statute, if the new trial is granted on grounds contained in either the first or second exceptions mentioned in the statute, then the limitation of the statute to one new trial does not apply.

Now it is held in a number of cases that a verdict may be so contrary to the evidence as to amount, in legal effect, to misbehavior on the part of the jury or may "be regarded as springing from improper motives and should not be permitted to stand in any event."   [McGraw v. O'Neill, 123 Mo. App. 691, l. c. 705; Chlanda v. Transit Co., 213 Mo. 244, l. c. top of page 264; Partello v. Railroad, 217 Mo. 645, l. c. 661.] In Baker v. Stonebraker's Admrs., 36 Mo. 345, it is said that a verdict may be so greatly against the evidence "as to imply some gross partiality, or some prejudice or misconduct on the part of the jury."   [See, also, Price v. Evans, 49 Mo. 396; Spohn v. Mo. Pacific Ry. Co., 87 Mo. 74, l. c. 84; Rigby v. St. Louis Transit Co., 153 Mo. App. 330, l. c. 335.]

So that, when the trial judge in this case says the verdict is against the evidence both as to the facts constituting liability and also as to the injuries sustained, and, as one new trial has been granted on that ground, he cannot set the verdict aside for that reason; but that, on account of the efforts to improperly influence the jury and in view of the "suspicious circumstances with reference to the jury" he sets the verdict aside, this in reality is saying that improper influences were exerted and that they are shown to be successful by the verdict rendered contrary to the evidence. In other words, this is, in fact, a declaration on the part of the trial court that not only was there misbehavior on the part of the persons attempting to influence the jury, but that there was also misbehavior on the part of the jury in listening to these suggestions and bringing in such a verdict. In such case, the statute is no barrier to the granting of a new trial. Because if, in granting a new trial the second time, the judge thought and had good reason to think that improper influences had been brought to bear on the jury, and, in addition to the "suspicious circumstances" discernible by him, he took into consideration a verdict which was not only contrary to the evidence as to how the injury occurred but which was also returned in disregard of the evidence as to the extent of the injuries sustained, then the statute would not forbid the granting of another new trial. In such case the returning of a verdict thus regarded by the circuit judge after a trial in which he saw "suspicious circumstances" would, in legal effect, constitute such misconduct as to bring the case within the second exception mentioned by the statute. And unless the statute plainly forbids the granting of the second new trial, the case should be affirmed. Because, where a verdict is set aside by the trial judge for reasons like the present case, sound public policy requires that his action be upheld if possible. The strongest deterrent against

improprieties of every sort is the knowledge that their inevitable result, if they are discovered, will be to undo all that is sought to be accomplished.

It will not do to say that because affidavits were filed showing that Elliston failed to reach the juror he was caught attempting to reach, and because affidavits were also filed explaining that the association with one of the other jurors was perfectly innocent and that nothing was said to him about the case, and because the court was unable to obtain affirmative proof to the contrary, therefore the court is compelled to overrule the motion for new trial. Defendant complained of this conduct and requested that it cease while the trial lasted. This request was reasonable and proper and should have been instantly and heartily complied with. The fact that it was not complied with served rather to increase the litigant's suspicion than to allay it. As said by a distinguished jurist, "The *appearance* of justice is almost as important as the substance of it in the conduct of trials." The sanctity and purity of proceedings in courts of justice should be above suspicion. The same standard should be maintained in them as Caesar demanded in the reputation of his wife. To say that a litigant has no ground of complaint if affidavits are filed denying anything improper, is as unreasonable as to say that a husband cannot complain of improper appearances in the association of another man with his wife provided they both assure him that nothing wrong has been done. And when the trial judge says that he is not satisfied that there was nothing wrong, but on the contrary believes there was, and that another trial should be granted on that account, shall we say to him that he is wrong?

A careful reading of the entire record in the case, done, not for the purpose of weighing the testimony or of coming to a conclusion as to whether there was corruption in the case, or whether there was improper

influences exerted upon the jury, but to see whether
or not the trial judge abused his discretion, will con-
vince a disinterested person that there is a sufficient
showing to justify the trial court's action. The trial
court has exercised his discretion and judgment and
has granted a new trial. His action should be affirmed
since it does not appear that he has clearly abused
that discretion.

As a matter of justice it should be said that the
record shows that, if anything improper did reach
the jury, the attorneys in the case were in no way
responsible therefor nor cognizant thereof, or of any
attempt in that direction. We do not think that, even
by implication, it should be inferred that they were
in any way to blame for whatever did occur.

Neither is there an affirmative showing of any con-
nection of plaintiff with such improper efforts. And
the point is made that since the attorneys knew noth-
ing of anything wrong, and no relation of Elliston with
plaintiff was made to affirmatively appear, therefore,
plaintiff ought not to be punished by having her judg-
ment set aside on account of any improper efforts
having been attempted by him. The first answer to
this is that the judgment was not set aside as a pun-
ishment to anyone, but because the trial court thought
that, under the circumstances, it ought not to stand.
The only one to suffer punishment was Elliston whom
the trial court sent to jail for contempt. The next
answer is that, if the trial judge had good reason
to think matters were not right and he set aside the
verdict because of that belief, and the rule shall be
established that nevertheless his action will not be
upheld unless he can positively and affirmatively trace
a corrupt intention direct to the party most deeply in-
terested, then the trial court's power to keep the founts
of justice pure and unpolluted will be greatly weak-
ened and almost destroyed.

The order granting a new trial should.be affirmed. *Ellison, P. J.,* concurs. *Johnson, J.,* dissents. Cause certified to Supreme Court.

## DISSENTING OPINION.

JOHNSON, J.—I am unable to concur in the foregoing opinion and, deeming the conclusion therein reached to be in conflict with the decisions of the Supreme Court in McFarland v. Accident Association, 124 Mo. 204; Kreis v. Railway, 131 Mo. 533, and of the St. Louis Court of Appeals in Vermillion v. Parsons, 98 Mo. App. 72; Troll v. Protected Home Circle, 161 Mo. App. 719, I ask that the cause be certified to the Supreme Court.